IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY SMITH, | No. C 14-01159 EJD (PR) |
| Plaintiff, | ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS; DIRECTING DEFENDANT DELACRUZ TO FILE DISPOSITIVE MOTION OR NOTICE REGARDING SUCH MOTION |
| v. | |
| E. TOOTELL, et al., | |
| Defendants. | |
| | (Docket No. 25) |

Plaintiff, a state prisoner at San Quentin State Prison ("SQSP"), filed three pro se civil rights action pursuant to 42 U.S.C. § 1983, against SQSP medical officials. The Court consolidated the three actions as they involved the same defendants and a common set of facts. (Docket No. 4.) The Court found that, liberally construed, Plaintiff stated a claim for deliberate indifference to serious medical needs in violation of the Eighth Amendment, and ordered service of the complaint. (Docket No. 5.) Defendants have filed a motion to dismiss for failure to state a claim. (Docket No. 25, hereafter "Mot.".) Plaintiff filed an opposition, and Defendants filed a reply. For the reasons set forth below, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

///

# DISCUSSION

## I.  Statement of Facts

### A.  Case No. 14-01159 EJD (PR)

According to the complaint filed under Case No. 14-01159 EJD (PR), Plaintiff claims he has had "dizziness/lighthead[ed]ness/hot flashes" throughout his life. (Docket No. 1 at 3, hereafter "Compl. 1159"). In 2010, his "inner ear/dizziness" began to trouble him more than usual. (Id.) Dr. Kolher at Correctional Training Facility ("CTF") ordered a work-up for possible anemia. (Id.) In 2011, Plaintiff was transferred to San Quentin State Prison ("SQSP") where Defendant Dr. Denise Reyes because his primary care provider ("PCP"). In July 2013, Plaintiff was referred to Dr. Sassan Farjami in hematology for a workup for chronic anemia. (Id. Attach. at 12-13.) Dr. Farjami's impression was that hypogonadism was a possible cause of the chronic anemia, and he recommended a referral to an endocrinologist for a formal evaluation for the possibility of primary or secondary hypogonadism and possible hormone replacement. (Id.)

On September 25, 2013, Plaintiff filed an inmate health care appeal (Log No. SQ HC 13038508), complaining of various ailments, including lightheadedness/dizziness, night cough and hot flashes. (Compl. 1159, Attach. at 1-4.) In the appeal, he requested, among other things, to be seen by Dr. Reyes for his health issues and also that Dr. Reyes be investigated for failing to refer him to an endocrinologist as recommended by Dr. Farjami. (Id.)

According to the Second Level Appeal response prepared by Defendant E. Tootell, Chief Medical Executive at SQSP, (Compl. Attach. at 7-9), Plaintiff's request for an investigation and referral for an endocrinology specialist was denied "based on the criteria set forth in the California Code of Regulations, Title 15, Section 3350(a)(b)(1)(4)(5), which states that the medical department shall provide medical services for inmates based on medical necessity and supported by outcome data as effective medical care." (Id. at 9.) Defendant Tootell reviewed the recent care that

Plaintiff had received which included the following: 1) on September 26, 2013, Plaintiff discussed his dizziness, among other complaints, with Dr. Reyes who then prescribed medication for the dizziness and a follow-up appointment in three to four months; 2) on October 24, 2013, Plaintiff, complaining of dizziness and pain in his toes, was seen by Defendant DeLaCruz who addressed his issues, after which Plaintiff was released back to his unit in stable condition; 3) on October 31, 2013, Plaintiff again complained of dizziness and pain in his toes, was seen by Defendant DeLaCruz, and then released back to his unit in stable condition with no symptoms of acute distress; 4) on November 6, 2013, Plaintiff complained of pain in his toes, dizziness and coughing, was provided with appropriate treatment, and then released back to his unit in stable condition; and 5) on November 15, 2013, Plaintiff again complained of pain in his toes, dizziness and coughing, and was provided with appropriate treatment. (Id. at 8-9.) The second level decision found that Plaintiff's medical care met "local community medical care standards." (Id.)

According to the Director's Level Decision prepared by Defendant L. D. Zamora, Chief of California Correctional Health Care Services Office of Third Level Appeals-Health Care, Plaintiff's appeal was denied because his medical condition was evaluated and he was receiving treatment deemed medically necessary. (Id.) The decision included information that on September 26, 2013 and December 3, 2013, Plaintiff was seen by Dr. Reyes for his various complaints, including dizziness/lightheadedness and anemia. (Id. at 5-6.) Plaintiff's dizziness was determined not to be due to anemia or sleep disturbances (snoring, coughing). (Id.) The symptoms were diagnosed as "benign paroxysmal positional vertigo (a disorder arising in the inner ear; symptoms are repeated episodes of positional vertigo, that is, of a spinning sensation caused by changes in the position of the head). (Id.) Plaintiff had been prescribed meclizine to address the symptoms. (Id.) Plaintiff had not complained of dizziness in the last two months. (Id.) Furthermore, Dr. Reyes evaluated Plaintiff for his anemia, and noted that he did not warrant referral to an endocrinologist because

1  Plaintiff was fully functional and independent in his activities of daily living, the
2  anemia was mild, and there was no confirmed reason for it.  (Id.)

3  Plaintiff claims that Defendants E. Tootell, Dr. Reyes and L. D. Zamora were
4  aware of his condition and did not make the referral to the endocrinologist.  (Id.)
5  Plaintiff seeks declaratory relief and injunctive relief for his repeated episodes of
6  dizziness and lightheadedness and a referral to an endocrinologist for evaluation.  (Id. at
7  3-4.)

**B.**     **Case No. 14-01438 EJD (PR)**

9  According to the complaint filed under Case No. 14-01438 EJD (PR), Plaintiff
10  claims that his dizzy spells were bringing him more discomfort than usual "since around
11  August 2013."  (Docket No. 1 at 3, hereafter "Compl. 1438.")  Plaintiff claims that he
12  informed Defendant Nurse DeLaCruz "for months about how when I get up in the
13  morning I have this ring[]ing in my inner ear than [*sic*] get dizzy/lightheaded when I try
14  to sit up."  (Id.)

15  On September 12, 2013, Plaintiff filed an inmate appeal (Log No. SQ HC
16  13038273), accusing Defendant Nurse DeLaCruz of violating "clear[ly] established
17  Rules and Regulations 3354(e)" by failing to respond to his several requests for medical
18  attention for his dizziness/lightheadedness.  (Compl. 1438, Attach. at 1-4.)  He alleged
19  that during August 2013 and September 2013, he filed several requests for health
20  services (CDC Form 7362) which were not answered.  When he asked Defendant
21  DeLaCruz why his first request on August 3, 2013 was not responded to, "'She stated
22  she screened them out.'"  (Id. at 2.)

23  According to the First Level Appeal decision, Plaintiff was interviewed by
24  Defendant Nurse M. Ogren on October 3, 2013, concerning his appeal.  (Id. at 7.)
25  During the interview, Plaintiff told her about his discomfort, and that "some nights
26  unable to sleep because of the dizzyness [*sic*]."  (Compl. 1438 at 3.)  After reviewing
27  Plaintiff's electronic unit health record, Defendant Ogren found no record of a request
28  for health services on August 3, 2013, and August 5, 2013 as Plaintiff claimed.  (Id.,

1  Attach. at 7.) There was a record of a request filed on August 7, 2013, by which

2  Plaintiff was seen by a nurse on the same day. (Id.) However, another request made on

3  August 17, 2013, went unanswered. (Id.) Defendant Ogren informed Plaintiff that

4  medical staff would be educated on the scheduling process. The appeal was partially

5  granted at the first level. (Id.)

6      The Second Level Appeal decision by Defendant Tootell found that the first

7  level of review provided Plaintiff with a comprehensive and appropriate response.

8  (Compl. 1438, Attach. at 9-10.) It noted that Plaintiff was seen by his PCP on

9  September 26, 2013, regarding his dizziness, among other complaints. (Id.)

10  Subsequently, Plaintiff was seen on October 24, 2013, October 31, 2013, and November

11  6, 2013, in response to his request for health services for dizziness, and each time he

12  was assessed and released back to his unit in stable condition. (Id.) The second level

13  decision found that Plaintiff's medical care met local community medical care

14  standards. (Id.)

15      The Director's Level Decision by Defendant Zamora denied his appeal, finding

16  no intervention was necessary as Plaintiff's medical condition had been evaluated and

17  he was receiving treatment deemed medically necessary. (Compl. 1438, Attach. at 5-6.)

18      Plaintiff seeks declaratory relief and injunctive relief, i.e., to be seen by an

19  endocrinologist for his dizziness, lightheadedness and hot flashes, a work-up for his

20  anemia and a follow-up evaluation by an hematologist. (Id. at 3-4.)

21      **C.**    **Case No. 14-02567 EJD (PR)**

22      The complaint filed under Case No. 14-02567 EJD (PR), makes identical

23  allegations against Defendant DeLaCruz as in Plaintiff's inmate appeal discussed above,

24  i.e., Log No. SQ HC 13038273. See supra at 4; (Docket No. 1 at 3, hereafter "Compl.

25  2567"). Plaintiff got so lightheaded while walking on August 1, 2013 and then again

26  the next day, that he had to stop and sit down. (Compl. 2567 at 3.) On August 3, 2013,

27  Plaintiff sent Defendant Nurse DeLaCruz an inmate medical request. (Id.) When he

28  got no response, he sent another request on August 5, 2013, and then another on August

Order Granting In Part Motion to Dismiss; Directing D to file MSJ
P:\PRO-SE\EJD\CR.14\01159Smith_part.grant.mtd.wpd      5

1  7, 2013.  (Id.)  On August 9, 2015, Plaintiff was finally seen by Defendant DeLaCruz,
2  who stated that she had screened Plaintiff's medical requests out and did not call him
3  cause they had "talked about the issue before."  (Id.)  She stated, "You look fine to me
4  now."  (Id.)

5      Plaintiff's complaint against Defendant DeLaCruz in his inmate appeal were
6  converted into a staff complaint, and assigned Log No. SQ SC 14000303.  (Compl.
7  2567, Attach. at 5.)  According to the Director's Level Decision, the staff complaint was
8  referred for a "Staff Complaint Inquiry," which involved interviews of Plaintiff and
9  Defendant DeLaCruz and a review of Plaintiff's electronic Unit Health Record and the
10 Health Care Appeals Risk Tracking System.  (Id. at 7.)  The supervisor's conclusion
11 was that Defendant DeLaCruz did violate CDCR policy, specifically Inmate Medical
12 Services Policies and Procedures Volume 4, Chapter 4 Access to Care and SQ
13 Operating Procedure #03-040: Access to Primary Care.  (Id.)

14     Plaintiff claims that he sent Defendant E. Tootell a request for an interview on
15 August 5, 2013, regarding Defendant DeLaCruz's indifference to his medical needs.
16 (Id.)  Plaintiff seeks declaratory relief and damages.  (Compl. 2567 at 3.)

17     Plaintiff filed the three actions against Defendants Dr .Reyes, Tootell, Zamora,
18 Ogren and DeLaCruz based on the above allegations.  Liberally construed, the Court
19 found he stated a cognizable claim of deliberate indifference to serious medical needs in
20 violation of the Eighth Amendment.

21 **II.**     **Motion to Dismiss**
22     **A.**     **Standard of Review**

23     Dismissal for failure to state a claim is a ruling on a question of law.  See Parks
24 School of Business, Inc., v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).  "The issue
25 is not whether plaintiff will ultimately prevail, but whether he is entitled to offer
26 evidence to support his claim."  Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th
27 Cir. 1987).  Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain
28 statement of the claim showing that the pleader is entitled to relief."  "Specific facts are

Order Granting In Part Motion to Dismiss; Directing D to file MSJ
P:\PRO-SE\EJD\CR.14\01159Smith_part.grant.mtd.wpd         6

not necessary; the statement need only give the defendant fair notice of what the . . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citation and internal quotations omitted). The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. Sanders v. Kennedy, 794 F.2d 478, 481 (9th Cir. 1986).

A district court should grant a motion to dismiss if the plaintiff has not pled "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal citations omitted). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." In re Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996). "Factual allegations must be enough to raise a right to relief above the speculative level . . ." Twombly, 550 U.S. at 556 (citations omitted). In addition, the pleading must not merely allege conduct that is conceivable, but it must also be plausible. Id. at 570.

Review is limited to the contents of the complaint, see Clegg v. Cult Awareness Network, 18 F.3d 752, 754 (9th Cir. 1994), including documents physically attached to the complaint or documents the complaint necessarily relies on and whose authenticity is not contested, see Lee v. County of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001). In addition, the court may take judicial notice of facts that are not subject to reasonable dispute. See id. at 688–89 (discussing Fed. R. Evid. 201).

Ultimately, a complaint survives a motion to dismiss where it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). Only where a plaintiff has failed to "nudge[ ] [his or her] claims . . . across the line from conceivable to plausible" is the complaint properly dismissed. Id. at 680.

1   While the plausibility requirement is not akin to a probability requirement, it demands
2   more than "a sheer possibility that a defendant has acted unlawfully." Id. at 678. This
3   plausibility inquiry is "a context-specific task that requires the reviewing court to draw
4   on its judicial experience and common sense." Id. at 679.

5       If a complaint fails to state a plausible claim, "'a district court should grant leave
6   to amend even if no request to amend the pleading was made, unless it determines that
7   the pleading could not possibly be cured by the allegation of other facts.'" Lopez v.
8   Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting Doe v. United States, 58
9   F.3d 494, 497 (9th Cir. 1995)); see also Gardner v. Marino, 563 F.3d 981, 990 (9th Cir.
10  2009) (finding no abuse of discretion in denying leave to amend when amendment
11  would be futile).

12      **B.**    **Deliberate Indifference to Serious Medical Need**

13      Deliberate indifference to serious medical needs violates the Eighth
14  Amendment's proscription against cruel and unusual punishment. Estelle v. Gamble,
15  429 U.S. 97, 104 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992),
16  overruled on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136
17  (9th Cir. 1997) (en banc). A serious medical need exists if the failure to treat a
18  prisoner's condition could result in further significant injury or the "unnecessary and
19  wanton infliction of pain." Id. (citing Estelle, 429 U.S. at 104). A prison official is
20  deliberately indifferent if he knows that a prisoner faces a substantial risk of serious
21  harm and disregards that risk by failing to take reasonable steps to abate it. Farmer v.
22  Brennan, 511 U.S. 825, 837 (1994). In order for deliberate indifference to be
23  established, there must be a purposeful act or failure to act on the part of the defendant
24  and resulting harm. See McGuckin, 974 F.2d at 1060. Neither a finding that a
25  defendant's actions are egregious nor that they resulted in significant injury to a
26  prisoner is required to establish a violation of the prisoner's federal constitutional rights.
27  Id. at 1060–61 (citing Hudson v. McMillian, 503 U.S. 1, 7–10 (1992)). Deliberate
28  indifference may be shown where access to medical staff is meaningless as the staff is

not competent and does not render competent care. See Lolli v. County of Orange, 351 F.3d 410, 420–21 (9th Cir. 2003).

### C. Analysis

Defendants argue generally that Plaintiff's allegations in the three consolidated cases do not state a claim for deliberate indifference because the pleadings and exhibits demonstrate that Plaintiff's health care providers actively treated, and continue to treat, Plaintiff's lifelong ailments of lightheadedness and dizziness. (Mot. at 6.) Defendants assert that the pleadings show that Plaintiff was seen eleven times over a fourth month period, and that far from being indifferent, Defendants have provided appropriate ongoing care. (Id.)

#### 1. Defendant Dr. Reyes

Plaintiff claims that Dr. Reyes did not treat his complaints and failed to refer him to an endocrinologist as recommended by Dr. Farjami. Contrary to his first claim, the pleadings show that Plaintiff did in fact see Dr. Reyes on September 26, 2013 and December 3, 2013 for his various complaints, including dizziness, lightheadedness and anemia. See supra at 3. Furthermore, Plaintiff was diagnosed with benign paroxysmal positional vertigo for which he receives medication. Id. Dr. Reyes also evaluated Plaintiff for his anemia, and made the referral to Dr. Farjami. However, Dr. Reyes decided that a referral to an endocrinologist was not warranted because Plaintiff was fully functional and independent in his activities of daily living, the anemia was mild, and there was no confirmed reason for it. Id. Plaintiff's assertion that she is wrong and that a referral is necessary is nothing more than a difference of opinion between a prisoner-patient and prison medical authorities regarding treatment which does not give rise to a § 1983 claim. Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). Similarly, a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference, see Toguchi, 391 F.3d at 1058, 1059-60; Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Mayfield v. Craven, 433 F.2d 873, 874 (9th

Cir. 1970). Accordingly, based on the allegations in the complaints, Plaintiff fails to state an Eighth Amendment claim against Dr. Reyes.

In opposition, Plaintiff asserts for the first time that Dr. Reyes told him that no treatment is necessary for his dizzy spells and lightheadedness. (Opp. at 2.) "In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." Broam v. Bogan, 320 F.3d 1023, 1026 (9th Cir. 2003) (citing Schneider v. Cal. Dep't. of Corr., 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998); see also Clegg, 18 F.3d at 754–55 (in evaluating a motion to dismiss, the Court must limit its review to the contents of the complaint). In evaluating the motion to dismiss, the Court may only consider whether the facts alleged in the complaint state an Eighth Amendment claim against Defendants and may not consider the new allegations made by Plaintiff in the opposition. As discussed above, the facts alleged in the complaint do not state an Eighth Amendment claim.

Furthermore, Defendants point out that this new assertion is contradicted by the allegations and documentation accompanying the three complaints. (Reply at 2.) The documentation state that Plaintiff was prescribed the meclizine as needed to address the symptoms. (Compl. 1159 at 10; Compl. Compl. 1438 at 8.) It was also noted that Dr. Reyes had in fact prescribed medication to treat Plaintiff's dizziness. See supra at 2. Accordingly, leave to amend with respect to his claim against Defendant Reyes with this new allegation would be futile.

For the reasons discussed above, Plaintiff fails to state a claim of deliberate indifference to serious medical needs against Defendant Dr. Reyes. The claim against her is DISMISSED.

**2. Defendants Tootell, Zamora and Ogren**

Defendants assert that Defendants Tootell, Zamora and Ogren cannot be held liable in as much as Plaintiff has not been denied appropriate medical care because their sole involvement was in the processing of his administrative grievances. (Mot. at 7-8.)

Defendants rely on Peralta v. Dillard, 744 F.3d 1076 (9th Cir. 2014), which they argue held that deliberate indifference claims premised solely on defendants' review of an inmate's administrative grievances do not adequately allege requisite personal knowledge and are subject to dismissal. (Mot. at 8, citing Peralta, 744 F.3d at 1086-87.) The Court, however, finds that Peralta's holding is narrower than Defendants argue, i.e., a prison medical officer without expertise in a specific field who denies an inmate appeal for medical care after it was reviewed by two qualified medical officials does not demonstrate a wanton infliction of unnecessary pain. 744 F.3d at 1086-87. It is unclear whether Defendants are without expertise in the specific field at issue and whether they relied solely on other qualified medical officials' opinions in denying Plaintiff's appeals. Accordingly, it cannot be said that the claims against them must strictly be dismissed under Peralta.

Viewing the complaints in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to state an Eighth Amendment claim against Defendants Zamora, Tootell and Ogren because the pleadings do not indicate that they knew Plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable steps to abate it. Farmer, 511 U.S. at 837. At the Director's Level Decision, Defendant Zamora reviewed the relevant records and found that Plaintiff had been diagnosed with vertigo and prescribed meclizine to treat the symptoms. See supra at 3. Plaintiff also had not complained of dizziness in the last two months. Id. Furthermore, Defendant Zamora noted that Plaintiff's anemia was mild and being monitored. Id. Accordingly, it cannot be said that Defendant Zamora was aware that Plaintiff faced a substantial risk of serious harm and disregarded that risk by denying the appeal matter.

The same is true of Defendant Tootell. In the Second Level of Review decision, Defendant Tootell noted that Plaintiff was seen by Dr. Reyes on September 26, 2013, at which time his complaint of dizziness, among other things, was addressed. See supra at 3. It was also noted that Plaintiff requested and received health care services for his

dizziness, among other complaints, on four separate occasions during October 2013 and November 2013. Id. Each time the record showed that Plaintiff was treated appropriately and then released back to his unit in stable condition. Id. Accordingly, it cannot be said that Defendant Tootell was aware that Plaintiff faced a substantial risk of serious harm and disregarded that risk by denying the appeal at the second level of review.

Lastly, the pleadings show that Defendant Nurse Ogren's only involvement in this matter was interviewing Plaintiff for the purposes of his inmate appeal, Log No. SQ HC 13038273, wherein he accused Defendant Nurse DeLaCruz of violating policy when she "screened out" his health care requests. See supra at 4. Plaintiff told Nurse Ogren about his discomfort and that he could not sleep some nights because of the dizziness. Id. However, this discomfort and a few sleepless nights are not indicative of "a serious medical need" which could result in further significant injury or the "unnecessary and wanton infliction of pain" if Nurse Ogren failed to treat Plaintiff's condition. Estelle, 429 U.S. at 104. In addition, there is no allegation that Nurse Ogren was aware that Plaintiff faced a substantial risk of serious harm and that she disregarded that risk; in fact, she told Plaintiff that she would speak with staff about following procedure. See supra at 4.

In light of the foregoing, Defendants' motion to dismiss the claims against Defendants Zamora, Tootell and Ogren is GRANTED.

### 3. Defendant Nurse DeLaCruz

Defendants make no specific argument with respect to the claims against Defendant Nurse DeLaCruz other than to assert generally that the combined pleadings and exhibits demonstrate that Plaintiff's health care providers were and are actively treating his lifelong ailment of lightheadedness and dizziness, and continue to monitor the condition. (Mot. at 6.)

Viewing the complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff has pled enough facts to state a claim to relief that is plausible on its face.

Iqbal, 556 U.S. at 678. In August 2013, Plaintiff sent Nurse DeLaCruz several requests for health care services for his dizziness and lightheadedness which she ignored. See supra at 5-6. The conclusion of the "Staff Complaint Inquiry" was that Nurse DeLaCruz did violate CDCR policy regarding Plaintiff's access to care. Id. Deliberate indifference may be shown in the way in which prison officials provide medical care, including failure to respond to a delay in treatment. See, e.g., McGuckin, 974 F.2d at 1062 (delay of seven months in providing medical care during which medical condition was left virtually untreated and plaintiff was forced to endure "unnecessary pain" sufficient to present colorable § 1983 claim). Accordingly, Defendants' motion to dismiss the claim against Nurse DeLaCruz is DENIED.

### D. Qualified Immunity

Defendants also argue that Nurse DeLaCruz is entitled to qualified immunity.[1] The defense of qualified immunity protects "government officials... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court set forth a two-pronged test to determine whether qualified immunity exists. First, the court asks: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. at 201. If no constitutional right was violated under the facts as alleged, the inquiry ends and defendants prevail. See id. If, however, "a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. . . . 'The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' . . . The relevant, dispositive inquiry in determining whether a right

---

[1] Because the Court finds that no constitutional violation occurred with respect to Plaintiff's claim against Defendants Reyes, Zamora, Tootell, and Ogren, it is not necessary to reach the qualified immunity argument for these Defendants.

Order Granting In Part Motion to Dismiss; Directing D to file MSJ
P:\PRO-SE\EJD\CR.14\01159Smith_part.grant.mtd.wpd         13

is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 201-02 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). Although Saucier required courts to address the questions in the particular sequence set out above, courts now have the discretion to decide which prong to address first, in light of the particular circumstances of each case. See Pearson v. Callahan, 555 U.S. 223, 236 (2009).

With respect to the first prong, Defendant has failed to establish that there was no constitutional violation because the facts alleged in the complaints show that Nurse DeLaCruz violated Plaintiff's Eighth Amendment rights by failing to respond to his requests for health care services. See supra at 5-6. Secondly, at the time of the incident it was clearly established that prison officials may be acting with deliberate indifference by failing to respond or delaying treatment. See, e.g., McGuckin, 974 F.2d at 1062. Defendants have failed to establish that no reasonable medical official would have known that failing to respond to repeated requests for treatment violated the Eighth Amendment. Accordingly, Nurse DeLaCruz has failed to establish her entitlement to qualified immunity. The motion based thereon is DENIED.

**CONCLUSION**

For the reasons stated above, the Court orders as follows:

1. Defendants' motion to dismiss is DENIED with respect to the Eighth Amendment claim against Defendant DeLaCruz, but GRANTED with respect to the claims against Defendants Reyes, Zamora, Tootell and Ogren.

The Clerk shall terminate Defendants Reyes, Zamora, Tootell and Ogren from this action.

2. No later than **sixty (60) days** from the date of this order, Defendant DeLaCruz shall file a motion for summary judgment or other dispositive motion with respect to the Eighth Amendment claim against her.

    a. Any motion for summary judgment shall be supported by adequate

factual documentation and shall conform in all respects to Rule 56 of the Federal Rules of Civil Procedure. Defendant is advised that summary judgment cannot be granted, nor qualified immunity found, if material facts are in dispute. If Defendant is of the opinion that this case cannot be resolved by summary judgment, he shall so inform the Court prior to the date the summary judgment motion is due.

    b. **In the event Defendant files a motion for summary judgment, the Ninth Circuit has held that Plaintiff must be concurrently provided the appropriate warnings under <u>Rand v. Rowland</u>, 154 F.3d 952, 963 (9th Cir. 1998) (en banc). See <u>Woods v. Carey</u>, 684 F.3d 934, 940 (9th Cir. 2012).**

  3. Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on Defendant no later than **twenty-eight (28) days** from the date Defendant's motion is filed.

  Plaintiff is also advised to read Rule 56 of the Federal Rules of Civil Procedure and <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986) (holding party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim). Plaintiff is cautioned that failure to file an opposition to Defendant's motion for summary judgment may be deemed to be a consent by Plaintiff to the granting of the motion, and granting of judgment against Plaintiff without a trial. See <u>Ghazali v. Moran</u>, 46 F.3d 52, 53-54 (9th Cir. 1995) (per curiam); <u>Brydges v. Lewis</u>, 18 F.3d 651, 653 (9th Cir. 1994).

  4. Defendant <u>shall</u> file a reply brief no later than **fourteen (14) days** after Plaintiff's opposition is filed.

  5. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

  6. All communications by the Plaintiff with the Court must be served on Defendant, or Defendant's counsel once counsel has been designated, by mailing a true copy of the document to Defendant or Defendant's counsel.

  7. Discovery may be taken in accordance with the Federal Rules of Civil

1  Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or
2  Local Rule 16-1 is required before the parties may conduct discovery.

3      8.    It is Plaintiff's responsibility to prosecute this case. Plaintiff must keep
4  the court informed of any change of address and must comply with the court's orders in
5  a timely fashion. Failure to do so may result in the dismissal of this action for failure to
6  prosecute pursuant to Federal Rule of Civil Procedure 41(b).

7      9.    Extensions of time must be filed no later than the deadline sought to be
8  extended and must be accompanied by a showing of good cause.

9  This order terminates Docket No. 25.

11  DATED: 9/18/2015

EDWARD J. DAVILA
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

JERRY SMITH,

          Plaintiff,

  v.

E. TOOTELL, et al.,

          Defendants.

Case Number: CV14-01159 EJD

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on 9/21/2015, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Jerry Eugene Smith H-44485
San Quentin State Prison
San Quentin, CA 94964

Dated: 9/21/2015

Susan Y. Soong, Clerk
/s/ By: Elizabeth Garcia, Deputy Clerk